FILED
OCT 14 2014
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

ARLENE HOPKINS,

Plaintiff,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,

Defendant.

CIVIL FILE NO.: 14-5067

**COMPLAINT**

COMES NOW the above-named Plaintiff, Arlene Hopkins, by and through her counsel of record, Robin L. Zephier, and for her Complaint and causes of action against the above-named Defendant, states and alleges as follows:

1. Plaintiff, Arlene Hopkins, at all times relevant to this action, was a permanent resident and domiciled in Rapid City, Pennington County, State of South Dakota.

2. Defendant, American Standard Insurance Company of Wisconsin, a subsidiary of American Family Insurance Corporation, is a Wisconsin corporation doing business in the State of South Dakota and in Pennington County.

3. There is diversity of citizenship among and between the parties to this civil action.

4. Jurisdiction of this civil action therefore exists pursuant to 28 U.S.C. §1332. The amount in controversy exceeds the minimum jurisdictional requirements.

5. On December 13, 2008 Arlene Hopkins was a passenger in vehicle driven by the third party tortfeasor, Ida Mae Robideau. The vehicle, a 2000 Dodge Durango, was traveling westbound on Interstate 80 in Carbon County, Wyoming. The tortfeasor lost control of the vehicle on an icy road. The vehicle spun, slid off the road, and rolled into a fence on the side of

the road.

6. As a direct and proximate result of the above-described negligence of the third party tortfeasor Ida Mae Robideau, Arlene Hopkins sustained numerous severe and painful injuries to her person, both temporary and permanent, and in a sense, new injuries as well as the aggravation of existing conditions.

7. By reason of the above-described negligence of Ida Mae Robideau, in directly and proximately causing the injuries and damages sustained by her, Arlene Hopkins has been required to seek ongoing medical treatment, and had incurred bills and expenses for the services of various medical providers and other expenses related to the treatment of the injuries she sustained in the subject accident. The total of these expenses has exceeded $15,000.00. Plaintiff Arlene Hopkins has been informed and reasonably believes that by reason of the injuries Arlene Hopkins sustained in the subject accident, she will continue to require medical treatment and services for an undetermined period of time into the future to the end that she will incur additional medical expenses in the future. Plaintiff settled with the third party on or about February 27, 2012 with American Standard. Plaintiff was not forced to sue the tortfeasor. The tortfeasor, an American Standard Insured, had bodily injury liability per person per accident policy limits of $25,000. American Standard, after four years, finally agreed to formally tender offer the $24,950.00 policy limits for liability coverage on or about February 27, 2012. Plaintiff Arlene Hopkins also was insured by American Standard. She carried $25,000 per person per accident policy limits for liability coverage $10,000 per person per accident for first party MPC coverage, and $25,000 per person per accident for first party Underinsured Motorist UIM (and UM) coverage on her own American Standard auto insurance policy effective as of the date of the motor vehicle accident on December 13, 2008. American Standard exhausted the full

$10,000 first party MPC limits on or about August 2011. At that time, Plaintiff Arlene Hopkins still had $11,000 and unpaid medical expenses well in excess of the $10,000 MPC benefits paid. However, since Plaintiff Arlene Hopkin's American Standard auto policy only had UIM first party bodily injury coverage with per person per accident policy limits of $25,000, the 25/50 third party bodily injury (BI) limits of the tortfeasor's coverage equaled the amount of the 25/50 first party UIM BI policy limit of Hopkins' American Standard policy. As a result, American Standard took the position that they owed nothing to Hopkins under her own first party UIM BI 25/50 coverage.

8. By reason of the uninsured tortfeasor motorist's (Ida Mae Robideau) above-described negligence in directly and proximately causing the injuries sustained by her, Plaintiff Arlene Hopkins has suffered serious physical pain, loss of his enjoyment of life, medical expenses, scarring, fear, anxiety, disability, economic harm, worry, disfigurement, damage to credit, mental anguish, and in all reasonable probability will continue to suffer these losses for the remainder of her life and other consequential damages.

9. That this Court has both subject matter and personal jurisdiction over the parties in that Defendant American Standard Insurance Company of Wisconsin sold, marketed, and transacted private business in selling its insurance policy and policies of insurance to Plaintiff, who had purchased a first party automobile insurance policy to protect her family, her household members, and herself, from potential losses and accidents, such as this one which occurred in Wyoming on December 13, 2008. Plaintiff's present first party claims exceed the jurisdictional amount requirement and this Court has both subject matter and personal jurisdiction over the matter in that the insurance policy/contract sold by Defendant to Plaintiff Arlene Hopkins, was sold, marketed, serviced and delivered to Plaintiff in Pennington County, South Dakota.

**COUNT ONE**
**BREACH OF CONTRACT**

Plaintiff hereby incorporates paragraphs 1-9 of this Complaint, as if fully set forth herein.

10. Upon information and belief, on December 13, 2008, Plaintiff Arlene Hopkins, was an insured driver and policyholder of Defendant American Standard Insurance Company of Wisconsin.

11. The Plaintiff Arlene Hopkins was considered a named insured on her contract of insurance with American Standard Insurance Company of Wisconsin, policy# 11716365-07, which provides coverage for injuries, damages and entitlement to first party benefits, caused by third party tortfeasor uninsured motorists, and for first party medical payments coverage (MPC), and alleged disability coverage, for which Plaintiff has paid valuable consideration in the form of insurance premiums. Plaintiff Arlene Hopkins was a named policyholder at the time of the December 13, 2008 accident, and therefore was and is entitled to insured/policyholder status as to the first party American Standard Insurance Company of Wisconsin policy and the benefits thereto. Plaintiff had purchased first party auto insurance policy protections from Defendant in the amount of $25,000 per person per accident for Uninsured Motorist (UM) and Underinsured Motorist (UIM) coverage and $10,000 for per person per accident coverage for MPC.

12. The Defendant, American Standard Insurance Company of Wisconsin, has refused to honor its contract of insurance and has breached that contract, including but not limited to, failure to pay or acknowledge responsibility to pay for all of Arlene Hopkins' reasonable and necessary medical care expenses and other damages related to the December 13, 2008 accident, which it has contracted to do in its policy, once liability and causation of injuries became reasonably clear, and in failing to reasonably disclose the availability of said much needed first

party benefits, namely first party Medical Payments Coverage (MPC), and disability coverage.

13. To the best of Plaintiff's knowledge and belief, Defendant has a long standing and present Medical Payments Coverage and Uninsured Motorist (UM) and Underinsured Motorist (UIM) claims handling program called "Medical Services Program" which is basically a front end MPC and medical claims scrutiny procedure whereby the Defendant uses, has used, and continues to use, nurses, or other non-physician personnel to review patient's/named insured's MPC and/or UIM auto claims to determine whether Defendant will pay a named insured's medical expenses incurred as a result of motor vehicle accidents. This claims handling program/process is not included in Defendant's first party policy provisions, nor is it reasonably disclosed to actual or potential named insureds, or the manner in which it is administered, until there actually is a MPC claim and/or a UM/UIM claim.

14. To the best of Plaintiff's knowledge and belief, Arlene Hopkins' accident-related medical expenses have been put through Defendant's "Medical Services Program" ("MSP") scrutiny and/or its nurse driven program scrutiny on her own MPC and UIM/Bodily Injury claims in this case. The process, appears to also be used in Defendant's claim handling of other auto policy first party coverages such as UM and UIM as well. The claim handling process is further complicated for named and household insureds in that certain incurred medical expenses for medical care costs are not as readily recognized by Defendant as compensable and valued as is the care normally rendered by ordinary private health care sources.

15. It is reasonably believed by Plaintiff that Defendant and its claims agents adjusted Arlene Hopkins' injury claim for damages by utilizing computer software programs ("Collosus", "COA", and/or other computer software claims handling programs) or processes derived therefrom, in the determination of bodily injury and medical expense damages on first party

claims.

16. It is reasonably believed by Plaintiff that Defendant and its claims agents adjusted Arlene Hopkins' injury claim for damages while the claims representatives have been and/or are participating in American Standard Insurance Company of Wisconsin and/or American Family Insurance Company's "Corporate Incentive Program" (CIP) which provides for incentive compensation to the employee as a basis of controlling severity of claims payments, inter alia.

17. It is reasonably believed by Plaintiff that Defendant and its claims agents adjusted Arlene Hopkins' injury claim for damages while the in house legal counsel have been and/or are participating in American Standard Insurance Company and/or American Family Insurance Company's "Corporate Incentive Program" (CIP) which provides for incentive compensation to the employee as a basis of controlling severity of claims payments, inter alia.

## COUNT TWO
## BAD FAITH

Plaintiff hereby incorporates paragraphs 1-17 of this Complaint as if fully set forth herein.

18. That Defendant American Standard Insurance Company and/or American Family Insurance Company has acted in bad faith in rejecting most, if not a significant part of, Plaintiff's MPC and UIM claim and by failing to reasonably settle this UIM claim/case within policy limits of each coverage and furthermore, by failing to promptly and fully pay the MPC and UIM claim as requested by Plaintiff Arlene Hopkins, its own insured, after legal liability and proximate causation of said damages were reasonably clear, and undisputed.

19. That Defendant American Standard Insurance Company and/or American Family Insurance Company has acted in bad faith in its failure to adequately inform and otherwise reasonably advise Plaintiff Arlene Hopkins, of the existence of urgently needed and available

contractual and supplemental insurance coverages which were available to Arlene Hopkins, to her personal and economic damage.

20. That Defendant American Standard and/or American Family Insurance Company and its agents have acted in bad faith for failure to fully, reasonably and adequately advise the Plaintiff of the distinct coverages and the particular claims handling techniques and procedures implemented by Defendant under the Underinsured Motorist (UIM) and Medical Payments Coverage (MPC) coverages/benefits, to the damage of Arlene Hopkins in causing her rights and remedies to be potentially and actually jeopardized and damaged under contract.

21. That Defendant American Standard Insurance Company and/or American Family Insurance Company has acted in bad faith in its failure to reasonably and promptly provide payment of an undisputed amount of first party Underinsured Motorist (UIM) and/or Medical Payments Coverage (MPC) insurance benefits to Arlene Hopkins for her bodily injuries, by unreasonably withholding said benefits, when it is obvious and undeniable that Arlene Hopkins had suffered bodily injury as a result of the accident, at least to some undisputed degree and amount.

22. That Defendant American Standard Insurance Company has acted in bad faith, and not in good faith, in its failure to reasonably investigate said accident, its severity, and the serious and severe nature of Arlene Hopkins' injuries and damages, as a result of the no fault accident of its own insured caused by the tortfeasor Robideau's negligence, and in denying and/or delaying a reasonable payment of MPC/UIM bodily injury policy benefits to Arlene Hopkins, the Defendant's insured, once adequate reasonable proof of the same has been provided to Defendant's claims personnel.

23. That through use of its "Medical Services Program" claims handling procedure

and/or its nurse driven claim handling program/procedure, Defendant feels empowered to deny, diminish, dismiss, or challenge actual medical expenses incurred or to be incurred by a policyholder, including Arlene Hopkins here, by Defendant's use of nurses and other non physician personnel to scrutinize and/or override or question the medical care rendered to Arlene Hopkins and other policyholders similarly situated.

24. The Defendant, at the point of marketing, sale and initiation of the automobile insurance policy product to innocent and unsuspecting citizens such as to Arlene Hopkins, and those other named insureds similarly situated, by and through its agents, does not reasonably, fully, or sufficiently disclose to its named insureds, that first party claim(s) for benefits will be subject to this form of claim handling and scrutiny, ("MSP, "COA" and "CIP"), prior to first party claim benefits being handled, diminished, withheld, denied or paid. In fact, unsuspecting named insureds are most times totally unaware of these types of first party claims handling tactics, until it is too late, and they find themselves feeling the physical, emotional and financial stress of having their own insuror deny, withhold or diminish first party benefits (UIM, MPC, etc.) in this unreasonable fashion, and at a time when the policyholder/insured needs the carrier's obligation to come through the most. This is the position Plaintiff Arlene Hopkins found herself in as a result of Defendant's conduct.

25. That by reason of the foregoing, the Defendant is liable to the Plaintiff by and for Arlene Hopkins, for an amount to be determined by a jury and, in addition thereto, for the Plaintiff's attorney fees, costs and expenses of this action because of Defendant's vexatious, intentional, malicious and unreasonable refusal to pay reasonable damages to its insured; and for punitive and exemplary damages in the sum to be set by a jury herein, after giving due consideration to the net worth and earnings of the Defendant.

26. That Defendant American Standard Insurance Company and/or its successors and predecessors in interest has acted in bad faith by unfairly and unreasonably using a computer software claims handling system(s) called Colossus and/or COA, etc., in MPC and UM/UIM claims. Colossus and/or Claims Outcome Analyst (COA), are amongst several competing software claims handling systems used purportedly for valuing verdict values of first and third party bodily injury claims. These systems are represented to the public, when they are disclosed at all, as a "tool" for helping the adjustor to reach the injury value due to the insured or claimant. To Plaintiff's best knowledge and belief, Defendant uses Colossus, COA and/or some similar claims handling program or process to delay and undervalue claims, to save money for the Defendant's claims department, at the claimant's expense, and to increase profits to Defendant for purposes of paying bonuses and incentive pay to claims personnel through CIP.

27. By allowing their claims employees and/or in house legal counsel to participate in its "Corporate Incentive Program (CIP)", American Standard and/or American Family, according to Plaintiff's best knowledge and reasonable belief, is promoting a claim handling system which does not pay much or promptly on claims, including first party UM/UIM/MPC claims, and which is intended to achieve combined ratio goals that would create a conflict of interest for claims handlers if they receive incentive pay or bonuses for achieving lower claims payments. This incentive pay structure leads to using claim severity goals to affect the company's profitability which has an effect on individual claims payment amounts to American Standard's and/or American Family's insureds, including Plaintiff here.

**COUNT THREE:**
**FRAUD/CIVIL CONSPIRACY AGAINST DEFENDANT AMERICAN STANDARD INSURANCE COMPANY**

Plaintiff Arlene Hopkins hereby incorporates paragraphs one through twenty seven (1-27) of the Complaint as if fully set forth herein.

28. Defendant American Standard Insurance Company advertises, markets, promotes and sells automobile liability insurance policies in South Dakota to under-advised, unsuspecting, innocent and uninformed consumers, such as Plaintiff Arlene Hopkins here, for Uninsured/Underinsured Motorist (UM/UIM) coverage limits, equal to the bodily injury liability per person per accident limits (i.e., $25,000.00 limit for each), by Defendant American Standard Insurance Company collecting underwritten and subsumed premiums for both BI liability and UM/UIM coverages, when Defendant American Standard Insurance Company knew that circumstances are nearly impossible where a policyholder could recover UIM "benefits" under such a scheme when the underlying BI policy limit coverage is equal to the UIM coverage limit (25/50 each).

29. Defendant American Standard Insurance Company and/or its parent and subsidiary companies/entities, profit by selling fictitious (25/50 limits) UM/UIM coverage under this scheme, to Plaintiff Arlene Hopkins good faith reasonable belief, so that Defendant and other insurers and agencies similarly situated can collect and continue to collect premium profits from unsuspecting consumers for "nonexistant" UIM coverage. Defendant American Standard Insurance Company used preprinted forms to sell, market, and complete the transaction(s) and the application(s) with the preprinted, deceptive UM/UIM per person per accident policy limits of $25,000.00, as in the case of policy number 11716365-07.

30. Defendant American Standard Insurance Company's policy and coverages were written in a way that makes it likely that the policyholder will expect reasonably to be covered to a fair and reasonable extent for available first party benefits for UIM and MPC, when, in

actuality, Defendant American Standard Insurance Company's intent is not to provide those coverages or have to pay out benefits under 25/50 limits UIM coverages. This past and allegedly present and continuing practice is an unfair and deceptive trade practice.

31. Defendant American Standard Insurance Company have both suppressed and failed to reasonably disclose its practice of selling nonexistent UIM coverage, to its policyholders, when suppression of these facts is likely to, and actually does, mislead the policyholders.

32. Plaintiff Arlene Hopkins has relied on Defendant American Standard Insurance Company's material misrepresentations and omissions of material facts, and has been damaged as a result, of being so induced, creating a detrimental reliance on nonexistent UIM coverage under the circumstances.

33. Defendant American Standard Insurance Company, by their unfair and deceptive conduct complained of herein, and wrongful conspiracy, has been unjustly enriched in a manner which warrants a judicial determination that the practice of selling nonexistent UIM coverages, underwriting the insurance premium rates for UIM and charging monetary premiums for nonexistent UIM coverage for policy limits of $25,000.00 per person per accident, is an unfair and deceptive trade practice which injures consumers, including Plaintiff and those similarly situated.

34. As a proximate consequence of Defendant American Standard Insurance Company's improper conduct, the Plaintiff Arlene Hopkins made premium payments to Defendant American Standard Insurance Company and its agents by being induced by this conduct, to purchase separate, yet nonexistent, UIM coverage.

35. That Defendant American Standard Insurance Company either knew, or reasonably

should have known that by selling UIM coverage in an amount of $25,000.00 per person per accident policy limit, whereby state law for the minimum BI liability limit is $25,000.00, that Defendant American Standard Insurance Company would likely never have to pay any UIM benefits out to any claimant because the minimum BI limits are equal to the $25,000.00 UIM policy limit "coverage" offered, sold and marketed by Defendant, which is allegedly the only UIM limits allegedly offered by Defendant for sale to consumers such as Plaintiff Arlene Hopkins.

36. In committing the wrongful acts alleged, Defendant American Standard Insurance Company and its agents, marketers and underwriters, and those similarly situated insurance carriers and/or agents and/or agencies committing the same type of conduct as in this case, who are unnamed co-conspirators herein, have pursued a common plan, design, and course of conduct, acted in concert with, aided and abetted, and otherwise conspired with one another, in furtherance of the common design or scheme, as outlined herein.

37. Defendant American Standard Insurance Company and its agents, according to knowledge and reasonable belief, have conspired to purposefully conceal the practice by which Defendant American Standard Insurance Company and those now unnamed insurance carriers acting similarly, routinely, offer, market, induce, sell and profit from the sale of, insurance policies with the above described nonexistent (25/50 limits) UIM coverage, to innocent consumers, including Plaintiff Arlene Hopkins, by misrepresenting the true nature and existence of such coverages while collecting premiums for the same.

38. In furtherance of this conspiracy, Defendant American Standard Insurance Company's agents/sellers/marketers, in spite of their actual and/or constructive knowledge of such facts, never inform or otherwise reasonably and fully disclose to consumers, including

Plaintiff Arlene Hopkins, that the consumers were buying an alleged UIM coverage with a $25,000.00 UIM per person per accident limit for which the consumer may never in all likelihood be able to collect upon if needed.

39. Further, Defendant American Standard Insurance Company and its agents, and other unnamed insurance carriers and their agents acting similarly, also furthered the civil conspiracy by marketing, selling, offering and collecting premiums for, the almost entirely nonexistent (25/50 limits) UIM coverage by failing to disclose any of the above referenced facts to consumers, including Plaintiff Arlene Hopkins. This nondisclosure is purposeful, intentional, and planned, in that overt efforts were/are made by Defendant American Standard, to not disclose the reality of UIM "coverage" for $25,000 per person per accident in South Dakota. Defendant knows that if it is required to make even a minimal truthful disclosure about the virtual nonexistence of actual protection under a 25/50 UIM policy, that most innocent insurance consumers will not chose to buy a product with the likelihood of never paying benefits when benefits are needed to be paid. The non-disclosure of such facts caused consumers, including Plaintiff Arlene Hopkins, to be induced to pay for a nonexistent UIM coverage, which caused detrimental reliance by Plaintiff Arlene Hopkins and those other similarly situated consumers.

40. The common purpose of this civil conspiracy was and is to deceive consumers in the public, including Plaintiff Arlene Hopkins, so as to induce consumers to pay monetary premiums for a coverage for a "risk" which will likely never occur in a loss, and which results in a windfall to Defendant American Standard Insurance Company and its agents by implementing an unfair and deceptive scheme to wrongfully take money from its customers, insureds.

41. The effect of this alleged civil conspiracy is to violate state, tribal and

federal law, to breach duties of good faith and fair dealing, and to unfairly deceive Defendant American Standard Insurance Company's insureds and consumers in general, including Plaintiff here.

42. It is further alleged that Defendant's shareholders, corporate executives, and managing executives, have specifically known about this fraud and deceptive practice(s) which do in fact harm their unsuspecting and innocent policyholders such as Plaintiff here, and that as a result of the recent Burwell v. Hobby Lobby decision in the United States Supreme Court, executives and shareholders, can be potentially held individually liable under a piercing of the corporate veil allowed by said decision.

43. That as a "corporate person" through U.S. Supreme Court decisions such as Citizens United v. Federal Election Commission, McCutchen v. Colvin and Hobby Lobby v. Sebelius, the Defendant as a corporation, can now be subject to individual civil and criminal penalties under State, Federal and local law, such as the "three strikes law", corporate death penalty and stand your ground laws. That if evidence develops in the discovery of this case, indicating that Defendant should or shall be subject to said sanction(s), Plaintiff will seek to amend or incorporate additional claims or cases of action consistent with said evidence, and seek the appropriate sanction(s) therewith.

**COUNT FOUR**
**PUNITIVE DAMAGES**

Plaintiff hereby incorporates paragraphs 1-43 of this Complaint as if sully set forth herein.

44. In doing all the things herein alleged, Defendant acted intentionally, recklessly, vexatiously, oppressively and/or maliciously and is guilty of a wanton and reckless disregard of the contractual, common law and statutory rights of the Plaintiff Arlene Hopkins..

45. Plaintiff is entitled to punitive damages as the only way of deterring American Standard Insurance Company and/or its agents (and potentially its executives and shareholders) from continuing to employ these wrongful, wilfull, intentional, unreasonable and vexatious tactics against its own policyholders and first party claimants.

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. For the actual expenses incurred in the treatment and medical cost damage of the injuries sustained by Arlene Hopkins in the subject accident and for the actual expenses incurred incidental to the said injuries, past, present and future, and to the procuring of said treatment to the date of trial, together with interest thereon;

2. For such monetary compensation as shall fully compensate for the pain, anguish, scarring, anxiety, loss of peace of mind, economic deprivation, credit damage, fear, worry, loss of trust, disfigurement, disability, humiliation, frustration, loss of self worth, embarrassment, negligent infliction of emotional distress, intentional infliction of emotional distress, and loss of enjoyment of life, sustained by Plaintiff Arlene Hopkins to the date of trial and which is likely to continue into the future, in a sum to be determined by the jury in this case;

3. For an additional sum as and for punitive or exemplary damages in an amount to be set by the jury herein, based upon the Defendant's net worth and earnings (potentially, to include the net worth of Defendant's executives, shareholders, etc., under Hobby Lobby, etc.);

4. For Plaintiff's attorney fees, costs, and expenses of these proceedings because of Defendant's vexatious, intentional, reckless and unreasonable refusal to pay and in handling the sale, marketing and serving of said policy, and the handling of the first party claim(s);

5. For prejudgment interest on any award to which Plaintiff is held entitled by the jury; and

6. For such other and further relief as the Court deems just and equitable.

Dated this 10th day of October, 2014.

ABOUREZK & ZEPHIER P.C.

Robin L. Zephier
Attorney for Plaintiff
PO Box 9460
Rapid City, SD 57709
(605) 342-0097

**PLAINTIFF DEMANDS TRIAL BY JURY**